UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------x
JAMES PALMER,                   :
                                :
     Plaintiff,                 :
                                :
v.                              :   Civ. No. 3:10CV779(AWT)
                                :
KEITH RUGGIERO                  :
and DANIEL BOTHWELL,            :
                                :
     Defendants.                :
-------------------------------x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

James Palmer ("Palmer") brings this action against
Keith Ruggiero ("Ruggiero") and Daniel Bothwell
("Bothwell").  The Complaint sets forth claims pursuant to
42 U.S.C. § 1983 for false arrest and malicious
prosecution.  The defendants have moved for summary
judgment with respect to both of the plaintiff's claims.
For the reasons set forth below, the defendants' motion for
summary judgment is being granted.

## I.   FACTUAL BACKGROUND

Ruggiero and Bothwell were at all relevant times
employed as officers in the Milford Police Department.
Palmer resides at 155 North Street in Milford, Connecticut.
On the night of September 23, 2006 at approximately 9:00
p.m., Mary Larsen ("Larsen") called 911 to report a
possible break-in at her residence at 147 North Street,

immediately adjacent to Palmer's home.  Ruggiero and
Bothwell arrived at Larsen's residence shortly thereafter
in separate marked police cruisers and wearing standard
police uniforms.  They began an investigation, surveying
the property for potential intruders or signs of forced
entry.  At the time, a fireworks display from St. Mary's
Church, approximately half a mile away, was audible, though
not visible.  Palmer believed the noise to be gunfire.

At the time of his initial interaction with Bothwell,
Palmer did not know what the officers were on the scene to
investigate.  Palmer approached Bothwell in Larsen's
driveway and told him that he heard gunfire coming from the
woods, to which Bothwell responded, "Get the fuck out of
here." (Dep. of James Palmer (Doc. Nos. 29-3, 29-4 and 29-
5) ("Palmer Dep."), 42-43.)  Palmer responded, "But I hear
gunfire" and was again told by Bothwell, "Get the fuck out
of here." (Id. at 43.)  Palmer did not leave, but stood
there for 30 to 45 seconds before Bothwell said, "What did
I fucking say? I'm going to fucking arrest you if you don't
get the fuck out of here" and shoved Palmer, at which point
Palmer returned to his property. (Id. at 45.)

Believing he was suffering from an episode related to
post-traumatic stress disorder, Palmer returned home to
collect his keys and shoes, and got into his truck so he

could drive to the Veterans Administration Medical Center.
After Palmer got into his truck, Ruggiero and Bothwell
confronted him.  Bothwell opened the passenger door to the
vehicle, attempted to grab Palmer's wrists and ordered him
to get out.  At the same time, Ruggiero ordered Palmer out
of the vehicle while standing outside the driver's side
door.

Palmer got out of the vehicle after a few commands by
Ruggiero to do so.  Palmer placed his hands on top of the
vehicle when ordered to do so, but he did not comply with
the officers' repeated orders to place his hands behind his
back.  Instead he stated three times that he "didn't do
anything wrong."  (Id. at 65.)  Ruggiero then put Palmer's
right hand behind his back, and placed a handcuff on his
right wrist, and Ruggiero and Bothwell brought Palmer to
the ground face first, where they finished handcuffing him.
While they were taking the plaintiff to the ground,
Bothwell's ankle was injured when the plaintiff fell on it,
and Bothwell withdrew from the encounter.

Palmer was charged with interfering with an officer
in violation of Conn. Gen. Stat. § 53a-167a and assaulting
a public safety officer in violation of Conn. Gen. Stat.
§ 53a-167c.  Palmer filed a motion to dismiss both charges
on December 13, 2006.  The assault charge was dismissed for

lack of probable cause, and the prosecutor later nolled the
interfering charge on May 31, 2007.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted
unless the court determines that there is no genuine issue
of material fact to be tried and that the facts as to which
there is no such issue warrant judgment for the moving
party as a matter of law.  Fed. R. Civ. P. 56(c).  See
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223
(2d Cir. 1994).  When ruling on a motion for summary
judgment, the court may not try issues of fact, but must
leave those issues to the jury.  See, e.g., Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v.
Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.
1987).  Thus, the trial court's task is "carefully limited
to discerning whether there are any genuine issues of
material fact to be tried, not to deciding them.  Its duty,
in short, is confined . . . to issue-finding; it does not
extend to issue-resolution."  Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to
be resolved is both genuine and related to a material fact.
Therefore, the mere existence of some alleged factual
dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment.  An issue
is "genuine . . . if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party."
Anderson, 477 U.S. at 248 (internal quotation marks
omitted).  A material fact is one that would "affect the
outcome of the suit under the governing law."  Anderson,
477 U.S. at 248.  Only those facts that must be decided in
order to resolve a claim or defense will prevent summary
judgment from being granted.  Immaterial or minor facts
will not prevent summary judgment.  See Howard v. Gleason
Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary
judgment, the court must "assess the record in the light
most favorable to the non-movant and . . . draw all
reasonable inferences in its favor."  Weinstock v. Columbia
Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Delaware &
Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174,
177 (2d Cir. 1990)). However, the inferences drawn in favor
of the nonmovant must be supported by the evidence.
"[M]ere speculation and conjecture" is insufficient to
defeat a motion for summary judgment.  Stern v. Trs. of
Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting
W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d
Cir. 1990)).  Moreover, the "mere existence of a scintilla

of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant.  Anderson, 477 U.S. at 252.

**III. DISCUSSION**

**A. Count One: § 1983 False Arrest**

The defendants contend that the plaintiff's § 1983 false arrest claim is barred by the statute of limitations. The court agrees.

"The statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."  Wallace v. Kato, 549 U.S. 384, 397 (2007).

> Since Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations.  The Supreme Court has held that the forum state's statute of limitations for personal injury actions should apply to all Section 1983 actions.  In Connecticut, a statute provides a three year limitations period from the date of the act or omission complained of.

Dunbar v. Vonner, No. 3:07-cv-1472 (CFD), 2009 WL 426495, at *2 (D. Conn. Feb. 20, 2009) (internal citations omitted).

Palmer was arrested on September 23, 2006, and the prosecution stemming from that arrest commenced some time prior to Palmer's December 13, 2006 motion to dismiss the charges stemming from that arrest.  Thus, the statute of limitations for Palmer's false arrest claim commenced to run no later than December 13, 2006 and expired no later than December 13, 2009.  Palmer filed his complaint on May 18, 2010, which was after the statute of limitations expired.  Accordingly, summary judgment is being granted with respect to both defendants as to Palmer's § 1983 false arrest claim.

**B. Count Two: § 1983 Malicious Prosecution**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, . . . , and must establish the elements of a malicious prosecution claim under state law, . . . ."  Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted).  Under Connecticut law, "[t]o establish a cause of action for . . . malicious prosecution, a plaintiff must prove want of probable cause, malice and a termination of suit in the plaintiff's favor."  Harris v. Bradley Memorial Hosp. and Health Center, Inc., 296 Conn. 315, 330 (2010) (internal quotations omitted).  "Probable cause requires an

officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted).[1] Palmer was charged with, and prosecuted for, two offenses, interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a, and assaulting a public safety officer in violation of Conn. Gen. Stat. § 53a-167c.

Under Connecticut law, "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders, or endangers any peace officer . . . in the performance of such peace officer's . . . duties." Conn. Gen. Stat. § 53a-167a. The Connecticut Supreme Court addressed the scope of conduct proscribed by § 53a-167a in State v. Aoli, stating:

> [T]he broad language of § 53a-167a reflects a recognition by the legislature that because police officers are confronted daily with a wide array of diverse and challenging scenarios, it would be impractical, if not impossible, to craft a statute that describes with precision exactly what obstructive conduct is proscribed. In other words, § 53a-167a necessarily was drafted expansively to encompass a wide range of conduct that may be deemed to impede or hinder a police officer in the discharge of his or her duties.

---

[1] Thus, while it is understandable why from Palmer's perspective his actions seemed reasonable, the focus of the probable cause determination is on what knowledge or reasonably trustworthy information the officer had.

280 Conn. 824, 837 (2007).  In addition, there is no privilege to resist arrest under Connecticut law, and "the illegality of an arrest is not a defense to charges under . . . § 53a-167a."  State v. Davis, 261 Conn. 553, 567 (2002).

Palmer concedes that at the time he approached Bothwell in Larsen's driveway, the officers were conducting an investigation.  It is undisputed that the officers were investigating a report of a possible break-in, a potentially dangerous situation.  Palmer further concedes that he did not immediately obey Bothwell's repeated orders to leave the area, but rather simply stood there for a total of more than 30 to 45 seconds.  Thus, Bothwell had to use some of the time, energy and attention he would have otherwise been devoting to investigating the possible break-in to dealing with Palmer, which interfered with his efforts to investigate the situation at Larsen's house.  Given Palmer's failure to comply with Bothwell's orders to leave the area when the defendants were investigating a potentially dangerous situation, probable cause existed for arresting him on a charge of interfering with an officer.

In addition, Palmer concedes that when the officers repeatedly ordered him to place his hands behind his back,

he asserted to the officers that he had not done anything wrong, rather than complying with the order.  Palmer's failure to comply with the orders to put his hands behind his back so he could be handcuffed also constituted probable cause for arresting him on a charge of interfering with an officer.

The second charge on which Palmer was arrested and prosecuted was assaulting a public safety officer in violation of Conn. Gen. Stat. 53a-167c.  "To prove a violation of § 53a-167c . . . the state must establish: (1) intent to prevent a reasonably identifiable peace officer from performing his duties; (2) the infliction of physical injury to the peace officer; and (3) the victim must be a peace officer."  State v. Casanova, 255 Conn. 581, 592 (2001) (quoting State v. Raymond, 30 Conn. App. 606, 610 n. 4 (1993)).  It is undisputed that Bothwell's ankle was injured while the defendants were taking Palmer to the ground for the purpose of placing him in handcuffs, and it is also undisputed that the defendants only took Palmer to the ground for this purpose after he had failed to comply with repeated orders to place his hands behind his back so he could be handcuffed.  This conduct was sufficient to create probable cause as to the first element and there is no dispute that the second or third elements were

satisfied.  Therefore, probable cause existed to charge Palmer with a violation of Conn. Gen. Stat. § 53a-167c.

Accordingly, given that the existence of probable cause is an absolute defense to a § 1983 malicious prosecution claim, summary judgment is being granted with respect to both defendants as to Palmer's § 1983 malicious prosecution claim.

**IV. CONCLUSION**

For the reasons set forth above, the Defendants' Motion for Summary Judgment (Doc. No. 26) is hereby GRANTED.  The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this the 14th day of August 2012, at Hartford, Connecticut.

/s/
_____
Alvin W. Thompson
United States District Judge