```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF CONNECTICUT

--------------------------------x
JAMES PALMER,                   :
                                :
     Plaintiff,                 :
                                :
v.                              :    Civ. No. 3:10CV779(AWT)
                                :
KEITH RUGGIERO                  :
and DANIEL BOTHWELL,            :
                                :
     Defendants.                :
--------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

James Palmer ("Palmer") brings this action against Keith Ruggiero ("Ruggiero") and Daniel Bothwell ("Bothwell"). The Complaint sets forth claims pursuant to 42 U.S.C. § 1983 for false arrest and malicious prosecution. The defendants have moved for summary judgment with respect to both of the plaintiff's claims. For the reasons set forth below, the defendants' motion for summary judgment is being granted.

**I.    FACTUAL BACKGROUND**

Ruggiero and Bothwell were at all relevant times employed as officers in the Milford Police Department. Palmer resides at 155 North Street in Milford, Connecticut. On the night of September 23, 2006 at approximately 9:00 p.m., Mary Larsen ("Larsen") called 911 to report a possible break-in at her residence at 147 North Street,

1

immediately adjacent to Palmer's home.  Ruggiero and Bothwell arrived at Larsen's residence shortly thereafter in separate marked police cruisers and wearing standard police uniforms.  They began an investigation, surveying the property for potential intruders or signs of forced entry.  At the time, a fireworks display from St. Mary's Church, approximately half a mile away, was audible, though not visible.  Palmer believed the noise to be gunfire.

At the time of his initial interaction with Bothwell, Palmer did not know what the officers were on the scene to investigate.  Palmer approached Bothwell in Larsen's driveway and told him that he heard gunfire coming from the woods, to which Bothwell responded, "Get the fuck out of here."  (Dep. of James Palmer (Doc. Nos. 29-3, 29-4 and 29-5) ("Palmer Dep."), 42-43.)  Palmer responded, "But I hear gunfire" and was again told by Bothwell, "Get the fuck out of here."  (Id. at 43.)  Palmer did not leave, but stood there for 30 to 45 seconds before Bothwell said, "What did I fucking say? I'm going to fucking arrest you if you don't get the fuck out of here" and shoved Palmer, at which point Palmer returned to his property.  (Id. at 45.)

Believing he was suffering from an episode related to post-traumatic stress disorder, Palmer returned home to collect his keys and shoes, and got into his truck so he

could drive to the Veterans Administration Medical Center. After Palmer got into his truck, Ruggiero and Bothwell confronted him.  Bothwell opened the passenger door to the vehicle, attempted to grab Palmer's wrists and ordered him to get out.  At the same time, Ruggiero ordered Palmer out of the vehicle while standing outside the driver's side door.

Palmer got out of the vehicle after a few commands by Ruggiero to do so.  Palmer placed his hands on top of the vehicle when ordered to do so, but he did not comply with the officers' repeated orders to place his hands behind his back.  Instead he stated three times that he "didn't do anything wrong."  (Id. at 65.)  Ruggiero then put Palmer's right hand behind his back, and placed a handcuff on his right wrist, and Ruggiero and Bothwell brought Palmer to the ground face first, where they finished handcuffing him. While they were taking the plaintiff to the ground, Bothwell's ankle was injured when the plaintiff fell on it, and Bothwell withdrew from the encounter.

Palmer was charged with interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a and assaulting a public safety officer in violation of Conn. Gen. Stat. § 53a-167c. Palmer filed a motion to dismiss both charges on December 13, 2006.  The assault charge was dismissed for

lack of probable cause, and the prosecutor later nolled the interfering charge on May 31, 2007.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment.  Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).  Moreover, the "mere existence of a scintilla

of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

## III. DISCUSSION

### A. Count One: § 1983 False Arrest

The defendants contend that the plaintiff's § 1983 false arrest claim is barred by the statute of limitations. The court agrees.

"The statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 397 (2007).

> Since Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations. The Supreme Court has held that the forum state's statute of limitations for personal injury actions should apply to all Section 1983 actions. In Connecticut, a statute provides a three year limitations period from the date of the act or omission complained of.

Dunbar v. Vonner, No. 3:07-cv-1472 (CFD), 2009 WL 426495, at *2 (D. Conn. Feb. 20, 2009) (internal citations omitted).

6

Palmer was arrested on September 23, 2006, and the prosecution stemming from that arrest commenced some time prior to Palmer's December 13, 2006 motion to dismiss the charges stemming from that arrest. Thus, the statute of limitations for Palmer's false arrest claim commenced to run no later than December 13, 2006 and expired no later than December 13, 2009. Palmer filed his complaint on May 18, 2010, which was after the statute of limitations expired. Accordingly, summary judgment is being granted with respect to both defendants as to Palmer's § 1983 false arrest claim.

**B. Count Two: § 1983 Malicious Prosecution**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, . . . , and must establish the elements of a malicious prosecution claim under state law, . . . ." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). Under Connecticut law, "[t]o establish a cause of action for . . . malicious prosecution, a plaintiff must prove want of probable cause, malice and a termination of suit in the plaintiff's favor." Harris v. Bradley Memorial Hosp. and Health Center, Inc., 296 Conn. 315, 330 (2010) (internal quotations omitted). "Probable cause requires an

7

officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted).[1]  Palmer was charged with, and prosecuted for, two offenses, interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a, and assaulting a public safety officer in violation of Conn. Gen. Stat. § 53a-167c.

Under Connecticut law, "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders, or endangers any peace officer . . . in the performance of such peace officer's . . . duties." Conn. Gen. Stat. § 53a-167a.  The Connecticut Supreme Court addressed the scope of conduct proscribed by § 53a-167a in State v. Aoli, stating:

> [T]he broad language of § 53a-167a reflects a recognition by the legislature that because police officers are confronted daily with a wide array of diverse and challenging scenarios, it would be impractical, if not impossible, to craft a statute that describes with precision exactly what obstructive conduct is proscribed.  In other words, § 53a-167a necessarily was drafted expansively to encompass a wide range of conduct that may be deemed to impede or hinder a police officer in the discharge of his or her duties.

---

[1] Thus, while it is understandable why from Palmer's perspective his actions seemed reasonable, the focus of the probable cause determination is on what knowledge or reasonably trustworthy information the officer had.

280 Conn. 824, 837 (2007). In addition, there is no privilege to resist arrest under Connecticut law, and "the illegality of an arrest is not a defense to charges under . . . § 53a-167a." State v. Davis, 261 Conn. 553, 567 (2002).

Palmer concedes that at the time he approached Bothwell in Larsen's driveway, the officers were conducting an investigation. It is undisputed that the officers were investigating a report of a possible break-in, a potentially dangerous situation. Palmer further concedes that he did not immediately obey Bothwell's repeated orders to leave the area, but rather simply stood there for a total of more than 30 to 45 seconds. Thus, Bothwell had to use some of the time, energy and attention he would have otherwise been devoting to investigating the possible break-in to dealing with Palmer, which interfered with his efforts to investigate the situation at Larsen's house. Given Palmer's failure to comply with Bothwell's orders to leave the area when the defendants were investigating a potentially dangerous situation, probable cause existed for arresting him on a charge of interfering with an officer.

In addition, Palmer concedes that when the officers repeatedly ordered him to place his hands behind his back,

he asserted to the officers that he had not done anything wrong, rather than complying with the order.  Palmer's failure to comply with the orders to put his hands behind his back so he could be handcuffed also constituted probable cause for arresting him on a charge of interfering with an officer.

The second charge on which Palmer was arrested and prosecuted was assaulting a public safety officer in violation of Conn. Gen. Stat. 53a-167c.  "To prove a violation of § 53a-167c . . . the state must establish: (1) intent to prevent a reasonably identifiable peace officer from performing his duties; (2) the infliction of physical injury to the peace officer; and (3) the victim must be a peace officer." State v. Casanova, 255 Conn. 581, 592 (2001) (quoting State v. Raymond, 30 Conn. App. 606, 610 n. 4 (1993)).  It is undisputed that Bothwell's ankle was injured while the defendants were taking Palmer to the ground for the purpose of placing him in handcuffs, and it is also undisputed that the defendants only took Palmer to the ground for this purpose after he had failed to comply with repeated orders to place his hands behind his back so he could be handcuffed.  This conduct was sufficient to create probable cause as to the first element and there is no dispute that the second or third elements were

satisfied. Therefore, probable cause existed to charge Palmer with a violation of Conn. Gen. Stat. § 53a-167c.

Accordingly, given that the existence of probable cause is an absolute defense to a § 1983 malicious prosecution claim, summary judgment is being granted with respect to both defendants as to Palmer's § 1983 malicious prosecution claim.

**IV. CONCLUSION**

For the reasons set forth above, the Defendants' Motion for Summary Judgment (Doc. No. 26) is hereby GRANTED. The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this the 14th day of August 2012, at Hartford, Connecticut.

/s/
Alvin W. Thompson
United States District Judge
